**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| WILLIAM SMITH and LUBIRTA SMITH,    ) | |
|                  ) | |
|        Plaintiffs,          ) | |
|                  ) | |
|     vs.              ) | Case No. 3:09-CV-330 |
|                  ) | |
| SOUTH BEND HOUSING AUTHORITY, ) | |
| et al.               ) | |
|                  ) | |
|        Defendants.      ) | |

**BRIEF IN SUPPORT OF THE HOUSING AUTHORITY'S, MARVA
LEONARD-DENT'S AND THE COMMISSIONERS' MOTION TO DISMISS**

Plaintiffs fail to state a claim upon which relief can be granted against the Housing
Authority of South Bend, Marva J. Leonard-Dent, Susie Harvey-Tate, Earl L. Hairston, Rafael
Morton, Robert B. Toothaker, and Gladys Muhammad ("Defendants").[1]

First, Plaintiff has improperly sued the Commissioners, Ms. Leonard-Dent and the Board
of Commissioners.  Indeed, Plaintiffs' claims against the Commissioners and Ms. Leonard-Dent
are redundant of claims against the Housing Authority, and the "Board of Commissioners" is not
an entity subject to suit.

Moreover, each of Plaintiffs' thirteen claims against Defendants is improperly pled under
standards adopted by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544
(2007).  Indeed, Plaintiffs' Complaint neither gives Defendants fair notice of the basis of their
claims nor pleads sufficient facts to demonstrate an entitlement to relief.

---

[1] Plaintiffs have also named South Bend Mayor Stephen Luecke and Shaun Donovan, the Secretary of the
Department of Housing and Urban Development (HUD), as defendants in this case.  This Brief refers to
"Defendants" for simplicity and should not be construed to include Mayor Luecke or Secretary Donovan.

Finally, other defense defeat some of Plaintiff's claims. For example, Plaintiffs' segregation claims fail because Plaintiffs lack standing to bring them and because those claims are untimely. Plaintiffs' Fair Housing Act ("FHA") claims lack merit because they are not actionable under the FHA. Mr. Smith's wrongful eviction claims are barred by the *Rooker-Feldman* doctrine. Plaintiffs' bullying claims are not actionable because landlords cannot be held liable for alleged tenant-on-tenant harassment. Plaintiffs' claim under Title III of the Americans with Disabilities Act ("ADA") lacks merit because the Housing Authority is not a "private entity." And, Mr. Smith lacks standing to bring a breach of contract claim based on Mrs. Smith's lease.

For these reasons, Defendants respectfully request that Plaintiffs' claims against them with prejudice.

## PLAINTIFFS' ALLEGATIONS[2]

### I.   PARTIES

Plaintiffs William and Lubirta Smith are married and claim they are both tenants of 628 Western Avenue, a public housing development owned by the Housing Authority. (Pls' Compl. ¶ 13.) However, Mr. Smith is not identified as a tenant or a household member in the lease between the Housing Authority and Mrs. Smith (formerly Blackmon). (*See* Mrs. Smith's Lease Agreement attached hereto as Exhibit 1.)[3]

Plaintiffs allege that they are African-American. Mr. Smith claims he is an individual with a disability or handicap, but he does not identify what disability or handicap he allegedly

---

[2] The allegations in Plaintiffs' Complaint are taken as true only for purposes of this Motion to Dismiss.

[3] Mrs. Smith's lease is expressly referenced and relied on in the Complaint to support at least one claim made by Plaintiffs. (*See* Pls' Compl. ¶ 35.) Therefore, it is part of the pleadings, and can be considered by this Court when ruling on Defendants' Motion to Dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.")

has. (Pls' Compl. ¶ 13.) Rather, the Complaint alleges "Mr. William Smith is an individual with a disability or handicap in that he has significant limitations to major life activities, has a record of such limitations, and is perceived by Defendant HASB to have such limitations." (Pls' Compl. ¶ 3.)

Plaintiffs allege the Housing Authority is "a municipal corporate body, or part of the civil city of South Bend municipal corporate body, which owns and manages public housing projects funded by the United States Department of Housing and Urban Development (HUD), a federal executive department and agency." (Pls' Compl. ¶ 14.) Plaintiffs allege Defendant Marva Leonard-Dent is the Executive Director of the Housing Authority and "has responsibility for the management, direction, and oversight of HASB activities, services, and properties." (Pls' Compl. ¶ 15.) Plaintiffs allege that Defendant Board of Commissioners is "the corporate board exercising control over HASB and appoints and supervises the HASB Executive Director." (Pls' Compl. ¶ 16.) Plaintiffs claim the Housing Authority and the Board of Commissioners are "'persons' within the meaning of 42 U.S.C. 1983." (Pls' Compl. ¶ 10.) Plaintiffs identify Defendants Harvey-Tate, Hairston, Morton, Toothaker, and Muhammad as "members of the HASB Board of Commissioners." (Pls' Compl. ¶ 17.)

## II.   FACTS

Plaintiffs' Complaint includes five sets of allegations. First, Plaintiffs make allegations regarding the condition of their apartment and services at the Housing Authority, their complaints about those issues, and the Housing Authority's response. Specifically, Plaintiffs claim the condition of their apartment and building fail to "meet standards of habitability and peaceable enjoyment established by state and municipal law and incorporated into HUD requirements or established separately by HUD requirements." (Pls' Compl. ¶¶ 12, 13.) Plaintiffs claim they complained about those problems as well as "HASB services, and ... the

-3-

manner in which HASB staff members treated [Plaintiffs]," but Housing Authority staff members retaliated against them for complaining about these issues "by failing to take remedial action ... and by the manner in which HASB staff members treated [Plaintiffs]." (Pls' Compl. ¶¶ 14-15.) Plaintiffs further claim that these "acts" took place before and after Plaintiffs' marriage. (Pls' Compl. ¶ 16.)

Plaintiffs' second general allegation is that "[p]rior to the [Plaintiffs'] marriage, HASB took actions to evict Mr. Smith from his previous apartment. Mr. Smith had made repeated complaints about conditions and services at the HASB property." (Pls' Compl. ¶ 16.) Plaintiffs further allege that "HASB took the actions described in paragraph 17 while Mr. Smith was seriously ill and commenced legal proceedings against him when HASB knew he was hospitalized for serious surgery."[4] (Pls' Compl. ¶ 17.) On July 7, 2008, the St. Joseph Superior Court entered an Order awarding the Housing Authority possession in an eviction action against Plaintiff, William Smith. (*See* Ex. A to Defendants' Request for Judicial Notice.)

Plaintiffs' third general allegation is that "HASB staff members have retaliated against Mrs. Lubirta Smith because of her association with Mr. William Smith and because of her advocacy on his behalf before and after their marriage. This retaliation has taken the form of refusal to provide service and rude remarks to her." (Pls' Compl. ¶ 18.)

Plaintiffs' fourth general allegation is that "HASB staff members have also acquiesced in the bullying of Mr. Smith by at least one other resident and did nothing to intervene and stop the bullying." (Pls' Compl. ¶ 19.) There is no allegation that Mrs. Smith was bullied.

---

[4] This contention, which is contained in paragraph 17, refers to the acts in "paragraph 17". (Pls' Compl. ¶ 17.) Presumably, this reference is an error, and Plaintiffs intended to cite to the allegations in paragraph "16", which references the Housing Authority's alleged "actions to evict Mr. Smith from his previous apartment." (Pls' Compl. ¶ 16.)

Plaintiffs' final allegation alleges that the building and complex in which Plaintiffs live are "populated overwhelmingly by residents who are African-American and not Caucasian." (Pls' Compl. ¶ 20.)  Plaintiffs make a similar argument regarding the neighborhood in which Plaintiffs' building and complex "is located", alleging that it is "populated overwhelmingly by residents who are African-American or Latino and not Caucasian."  (Pls' Compl. ¶ 21.) Plaintiffs claim this "concentration" is far out of proportion to population demographics for the City of South Bend or St. Joseph County and that it is the result of Defendants' "intentional actions or deliberate indifference."  (Pls' Compl. ¶¶ 22-23.)

## III.   CLAIMS AGAINST DEFENDANTS

Plaintiffs allege fifteen claims total, and thirteen claims against Defendants.[5] Specifically, Plaintiffs claim Defendants violated:   (1) the FHA by discriminating against Plaintiffs based on their race and handicap; (2) Section 504 of the Rehabilitation Act of 1973 by discriminating against Plaintiffs on the basis of disability; (3) Title II of the Americans with Disabilities Act (ADA) by discriminating against Plaintiffs on the basis of disability; (4) Title III of the ADA by discriminating against Plaintiffs on the basis of disability; (5) 42 U.S.C. § 1981 by "act[ing] against Plaintiffs in regard to the Plaintiffs' right to own and possess housing because of the Plaintiffs' race and color;" (6) 42 U.S.C. § 1982 presumably based on the same facts alleged to support their Section 1981 claim[6]; (7) Plaintiffs' due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution as applied by 42 U.S.C. § 1983; (8) the United States Housing Act (USHA) "by failing to provide housing and services required by the [USHA];" (9) Article I of the Indiana Constitution by failing "to provide Plaintiffs with

---

[5] Plaintiffs' fourteenth claim is against Mayor Stephen J. Luecke, and their fifteenth claim is against Shaun Donovan, the Secretary of HUD.

[6] Defendants presume Plaintiffs intended to "re-assert the allegations" of paragraph 30 (regarding Section 1981), but mistakenly "re-assert[ed] the allegations of paragraph 27".  (Pls' Compl. ¶ 30.)  Paragraph 27 relates to Plaintiffs' Rehabilitation Act claim based on disability discrimination.  (Pls' Compl. ¶ 27.)

due course of law;" (10) Indiana law by entering into a lease with Plaintiffs that "is unconscionable and illegal" or administered "in an unconscionable and illegal manner;" (11) Indiana and municipal law by failing to provide Plaintiffs with a habitable premise; (12) Indiana and federal law by breaching "contracts of which the Plaintiffs are intended third-party beneficiaries;" and (13) Title VI of the Civil Rights Act by discriminating against Plaintiffs on the basis of their race.  (Pls' Compl. ¶¶ 26-38.)

**ARGUMENT**

## I.   GENERAL DEFENSES

Plaintiffs assert thirteen claims against the Housing Authority, Ms. Leonard-Dent, the Board of Commissioners and the Commissioners.  A number of defenses apply to all or some of Plaintiffs' claims against Defendants.  These general defenses are discussed in this section.

### A.   Plaintiffs' Claims Against Individual Defendants Are Redundant

Plaintiffs do not specify whether they are suing Ms. Leonard-Dent or the Commissioners in their individual capacities, in their official capacities, or both.  However, "[u]nless a plaintiff expressly indicates that a defendant is being sued as an individual, courts should construe an allegation that a defendant was acting under color of state law as a suit against that defendant in his official capacity only."  *See Herring v. Chicago Housing Authority,* 850 F.Supp. 694, 703-04 (N.D. Ill. 1994) (citing *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990).)  Plaintiffs' Complaint refers to Marva Leonard-Dent only as "Executive Director of HASB" noting that in this position she "has responsibility for operation of HASB activities, services, and properties." (Pls' Compl. ¶ 5.)  Similarly, Plaintiffs refer to the Commissioners in their official capacities as "members of the HASB Board Commissioners."  (Pls' Compl. ¶ 7.)  Plaintiffs describe the Board as "exercising control over HASB and appoints and supervises the HASB Executive

Director."  (Pls' Compl. ¶ 6.)  Thus, the individual Defendants are sued only in their official capacities.  *See Herring*, 850 F.Supp. at 703-04.

Plaintiffs' claims against the individual Defendants in their official capacities are really just claims against the Housing Authority.  *Id.*; *Kentucky v. Graham*, 473 U.S. 159, 166, 170 (1985).  Because the official capacity claims are "redundant" of the claims asserted against the Housing Authority, the claims against the individual Defendants should be dismissed with prejudice.  *See Comer v. Housing Authority of the City of Gary, Ind.*, 2009 WL 1299576, *4 (N.D. Ind. 2009); *Flores v. Vill. of Bensenville*, 2003 WL 1607795 (N.D. Ill. 2003).

### B.     The Board Of Commissioners Is Not A Suable Entity

Plaintiffs have named the "Board of Commissioners of HASB" as a Defendant in their lawsuit, yet the Board is not a separate entity that may sue or be sued.  (Pls' Compl. ¶ 6.)  To have the capacity to sue or be sued, Indiana law must specifically provide for it.  *See* Fed. Rule Civ. Proc. 17(b)(3).  Indiana law specifically provides for the creation of housing authorities and further provides that a housing authority may "sue or be sued."  *See* Ind. Code § 36-7-18-15. There is no corollary law regarding the Housing Authority's Board of Commissioners. Therefore, the claims against the Board of Commissioners should be dismissed with prejudice.

### C.     The *Rooker-Feldman* Doctrine Bars Mr. Smith's Wrongful Eviction Claims

Plaintiffs claim "HASB took actions to evict Mr. Smith from his previous apartment." (Pls' Compl. ¶ 16.)  Plaintiffs' further claim that HASB took these actions "while Mr. Smith was seriously ill and commenced legal proceedings against him when HASB knew he was hospitalized for serious surgery."  (Pls' Compl. ¶ 17.)  Plaintiffs do not specify which claims rely on Mr. Smith's eviction.

Under the *Rooker-Feldman* doctrine, this court does not have subject matter jurisdiction over any claims that are inextricably intertwined with state court eviction determinations.  *See*

*District Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Fincher v. South Bend Housing Authority*, 612 F.Supp.2d 1009, 1012 (N.D. Ind. 2009).  To determine whether federal claims fall within the doctrine's ambit, the Court must determine whether the injury alleged by the federal plaintiff arose from the state court judgment or whether it is independent from that judgment.  *See Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). "A plaintiff may not circumvent the effect of the *Rooker-Feldman* doctrine simply by casting [his] complaint in the form of a civil rights action."  *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000) (internal quotation marks omitted).

The application of these principles establishes that the *Rooker-Feldman* doctrine bars this Court from considering any of Plaintiffs' claims to the extent they rest on the alleged wrongful eviction of Mr. Smith.  This is true even if the eviction-based claims were not raised in the state court eviction proceedings because those claims are *inextricably intertwined* with the state court decision since Mr. Smith would not have suffered any alleged injury in the absence of the eviction proceedings.  *See, e.g., Holt v. Lake County Bd. of Comm'n*, 408 F.3d 335, 336 (7th Cir. 2005) (*Rooker-Feldman* applied because the injury plaintiff alleged in his § 1983 denial of due process claim was caused by the state court judgments upholding a tax sale and evicting him from his property); *Drewicz v. Dachis*, 2001 WL 1223524 at *3 (N.D. Ill. 2001) (because plaintiff "is complaining about the eviction itself ... [and is therefore] alleging injury caused by the state court judgment itself[,] [u]nder the *Rooker-Feldman* doctrine this court is without jurisdiction to consider plaintiffs claims").  Accordingly, Defendants request that all claims deriving from Plaintiffs' eviction be dismissed with prejudice.

### D.     Plaintiffs' Bullying Claims Are Not Actionable

Plaintiffs' bullying claims are not actionable because the alleged tenant-on-tenant harassment does not give rise to landlord liability.  *See Ohio Civil Rights Commission v. Akron*

*Metro. Housing Authority*, 119 Ohio St.3d 77, 892 N.E.2d 415 (Ohio 2008).  In *Akron Metro Housing Authority*, the plaintiffs filed a complaint against the Akron Housing Authority, alleging the housing authority violated a state civil rights statute by allegedly failing to take corrective action against a tenant whose racial harassment of another tenant created a hostile housing environment.  The Ohio Supreme Court rejected the plaintiffs' claim, holding that the landlord could not be held liable for racial harassment allegedly perpetrated by another tenant.  *Id.* at 420. In doing so, the court distinguished tenant-on-tenant harassment from claims that a landlord created a hostile housing environment through its own harassment of a tenant.  *Id.* at 417-18. The court also rejected "the argument that the principles of employer liability in hostile work-environment claims should be used as models for landlord liability for the acts of tenants."  *Id.* at 419-20.  The court reasoned that a landlord's control over its tenant is not comparable to an employer's control over his employee, and although a landlord has the power of eviction, that power alone "is insufficient to hold a landlord liable for his tenant's tortious actions against another tenant."

Plaintiffs' bullying claims against the Housing Authority derive from alleged tenant-on-tenant bullying.  (Pls' Compl. ¶ 19.)  Therefore, those claims should be dismissed with prejudice because tenant-on-tenant disputes do not give rise to landlord liability.

Even if tenant-on-tenant bullying could create landlord liability, Plaintiffs fail to tie the HASB's alleged acquiescence to race or disability discrimination.  Without doing so, Plaintiffs cannot state a claim under the FHA, Sections 1981 or 1982, ADA, Title VI, or the equal protection rights of the Indiana or U.S. Constitution because each law requires proof of discrimination.  *See Anast v. Commonwealth Apartments*, 956 F.Supp. 792, 800 (N.D. Ill. 1997) (essential element to FHA claim is intentional discrimination or discriminatory effect); *Grzan v.*

*Charter*, 104 F.3d 116, 119 (7th Cir. 1997) (Section 504 claim requires claimaint show he was discriminated against solely because of his handicap); *Gabby v. Luy*, 2007 WL 2773651 (E.D. Wis. 2007) (noting that under Title II, claimant must show they were discriminated against by reason of their disability); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999) (noting that Title III prohibits disability discrimination in public accommodation by private entities); *Morris v. Office Max*, 89 F.3d 411, 414 (7th Cir. 1996) (holding that one element of a Section 1981 claimant must show intent to discriminate on the basis of race); *Whisby-Myers v. Kiekenapp*, 293 F.Supp.2d 845, 850 (N.D. Ill. 2003) (holding intent to discriminate on the basis of race is essential to a Section 1982 claim); *Arlington Heights v. Metropolitan Life Ins. Co.*, 429 U.S. 252 (1977) (noting that equal protection and Title VI claims require that the plaintiffs demonstrate that the defendants had a discriminatory purpose).

## II.    PLAINTIFFS FAIL TO PROPERLY PLEAD THEIR CLAIMS AND SPECIFIC DEFENSES TO EACH CLAIM

Specific, affirmative defenses bar some of Plaintiffs' claims against Defendants. Moreover, each of Plaintiffs' thirteen claims against Defendants is improperly plead.  These defenses are discussed in this section.

### A.    Pleading Standards

Every one of these claims is insufficiently pled because each of Plaintiffs' claims is pled in conclusory terms and at best is a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jones v. South Bend Housing Authority*, 2009 WL 1657466 (N.D. Ind. 2009) (applying *Twombly* to a housing discrimination case); *Brenston v. Wal-Mart*, 2009 WL 1606935 (N.D. Ind. 2009) (applying *Twombly* to an employment discrimination case).  To survive a motion to dismiss based on the sufficiency of the complaint in the Seventh Circuit, the complainant must clear two hurdles.  *EEOC v. Concentra*

*Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (quotation marks and ellipses omitted). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id.* (quotation marks omitted).

None of Plaintiffs' claims clear these hurdles. Not one of the fifteen claims describes which (if any) of the factual allegations it relies on for support, leaving Defendants to speculate about what the basis of Plaintiffs' claims is. Moreover, even if the Court were to apply all of the facts Plaintiffs have alleged to each of their claims, Plaintiffs have not alleged facts sufficient to form a basis for relief.

### B.    Plaintiffs' Retaliation Claims Fail To Allege A Protected Activity

Plaintiffs vaguely allege that they have been retaliated against, but fail to link these allegations to any specific claim. Instead, the retaliation allegations are included only in the "facts" section of the Complaint and allege "HASB staff members have directly or indirectly retaliated against Mr. and Mrs. Smith by failing to take remedial action, because Mr. and Mrs. Smith complained about conditions in their apartment and building and about HASB services, and by the manner in which HASB staff members treated Mr. and Mrs. Smith." *See* Complaint, ¶ 15. Plaintiffs further allege "HASB staff members have retaliated against Mrs. Lubirta Smith because of her association with Mr. William Smith and because of her advocacy on his behalf before and after their marriage." *See* Complaint, ¶ 18.

While retaliation claims are cognizable under the FHA, Sections 1981 and 1982, the ADA and Title VI, Plaintiffs do not properly plead retaliation claims under any of these statutes because Plaintiffs do not alleged a protected activity. Under all of these statutes, Plaintiffs protected activity must relate to rights protected by the respective statute (*i.e.,* Plaintiffs'

complaints must relate to unlawful race or disability discrimination). *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against those who "opposed any practice made an unlawful employment practice by this subchapter"); *see also Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (holding Section 1981 provides a cause of action for those who have suffered retaliation for advocating the rights of those protected under Section 1981). Here, Plaintiffs allege they were retaliated against because they "complained about conditions in their apartment and building and about HASB services, and by the manner in which HASB staff members treated [them]." *See* Complaint, ¶ 18. None of these allegations suggest that Plaintiffs complained about race or disability discrimination, which are the rights protected by the statutes that can support Plaintiffs' retaliation claims. Accordingly, Plaintiffs' retaliation claims should be dismissed with prejudice.

**C.      Plaintiff Fails To Allege An Injury**

All of Plaintiffs' claims require Plaintiffs to allege an injury entitling them to relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (holding that a plaintiff must demonstrate they suffered and injury that is "fairly traceable" to the defendants' conduct in order to have standing). Plaintiffs conclusively state that "[a]s a direct and proximate result of the acts alleged, Mr. and Mrs. Smith have suffered, continue to suffer, and will suffer injuries for which they are entitled to compensation" and "for which they are entitled to equitable relief…" (Pls' Compl. ¶¶ 24-25.) These formulaic allegations merely state an element of Plaintiffs' claims (*i.e.,* injury entitling them to relief) but do not describe what the injury is or which actions allegedly caused the injury. This rote repetition of an element of Plaintiffs' claims is insufficient to put Defendants on notice of the nature of the claims or to state a plausible basis for recovery. *See Twombly*, 550 U.S. at 544, n. 3.

**D.      Plaintiffs' Segregation Claim Lacks Standing And Is Untimely**

Plaintiffs claim that "[t]he HASB building in which Mr. and Mrs. Smith reside, and the HASB complex in which the building is located are both populated overwhelmingly by residents who are African American and not Caucasian." (Pls' Compl. ¶ 20.)  The same allegation is made regarding the neighborhood surrounding the location of Plaintiffs' building. (Pls' Compl. ¶ 21.) Plaintiffs further claim that "the concentration of non-Caucasian residents described in paragraphs 21 and 22 is far out of proportion to the corresponding population demographics for the City of South Bend or the County of St. Joseph, IN," and that this concentration "occurred and remained because of the actions and acquiescence of Defendants or their predecessors in office." (Pls' Compl. ¶¶ 22-23.)

Plaintiffs fail to identify which of the thirteen claims against Defendants are associated with these segregation-type allegations.  Given the inherent racial nature of the segregation allegations, however, six of Plaintiffs' claims could presumably be tied to their segregation allegations—*i.e.,* Plaintiffs' claims under Title VI, Section 1981, Section 1982, the FHA and equal protection rights of the U.S. and Indiana Constitutions (as applied through Section 1983). But, these claims fail because Plaintiffs lack standing to assert these claims, and the statute of limitations for these claims has expired.

1.      *Plaintiffs Lack Standing To Assert Sections 1981, 1982 And Title VI Claims*

Plaintiffs (as residents rather than applicants for housing at 628 Western) lack standing to assert claims under Sections 1981, 1982, 1983 and Title VI because they have been harmed only indirectly by the alleged segregation and such claims violate principles of "prudential limitations". *See Warth v. Seldin*, 422 U.S. 490 (1975) (denying standing under Section 1981, 1982 and 1983 to residents who challenged town's exclusionary policies as depriving them of the

-13-

right to live in a racially integrated community); *see also U.S. General v. City of Joliet*, 432 F.Supp. 346 (D.C. Ill. 1977) (applying the holding of *Warth v. Seldin*).[7]  Prudential limitations prevent those who have been "harmed indirectly by the exclusion of others" from having standing.  *Id.*  Plaintiffs do not claim they are applicants for housing, but instead apparently seek relief because of the alleged harm they indirectly suffered as residents of the alleged "segregated" development.  Such indirect harm is not actionable under Section 1981, Section 1982 or Title VI, and therefore Defendants request that these claims be dismissed.

2.    *Plaintiffs' Segregation-Based Claims Are Barred By The Statute Of Limitations*

Plaintiffs' segregation claims challenge and seek redress for a 48-year-old decision to locate a development at 628 Western Avenue.  (*See* Attached Request for Judicial Notice filed herewith.)   The statute of limitations for Plaintiffs' FHA claim is two years. 42 U.S.C. § 3613(a)(1)(A).  Similarly, the statute of limitations for Plaintiffs' Section 1982, Section 1983 and Title VI claims is also two years.  *See Wilson v. Garcia,* 471 U.S. 261, 280 (1985) (holding that the proper limitations period for Section 1983 claims is the state statute governing actions for an injury to person or reputation); *Miles v. Trempealeau County*, 204 Fed.Appx. 570 (7th Cir. 2006); Ind. Code § 34-11-2-4 (setting forth a two-year statute of limitations for personal injury actions in Indiana); *Morse v. Univ. of Vermont*, 973 F.2d 122 (2nd Cir. 1992) (holding that Section 1982 and Title VI claims are generally governed by the statute of limitations applicable to state personal injury actions).  The statute of limitations for a Section 1981 claim is four years.

---

[7] Note, these prudential limitations prohibiting third party standing do not apply to the FHA, and therefore, Plaintiffs could challenge any allegedly discriminatory practices of the Housing Authority under the FHA based solely on their status as residents.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376-77 (1982) (holding that residents of a neighborhood had standing to challenge steering practices because they had been damaged by being denied the benefits of interracial association).  However, this claim would still have to be properly pled, which the current Complaint fails to do.  Moreover, as explained in Section II.E.1., Plaintiffs' segregation claim not actionable because it is a post-acquisition claim of discrimination.  And, as explained in the next section, Plaintiffs' segregation claims are untimely.

*See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The limitations period has long passed for Plaintiffs to assert segregation claims, and the continuing violations doctrine is inapplicable.

The continuing violation doctrine is applicable when a plaintiff "challenges not just one incident of conduct violative of the [Fair Housing] Act, but an unlawful practice that continues into the limitations period." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). Plaintiffs' specific challenge, however, makes no mention of a continuing practice or repeated violation, but rather relates only to the location of the property. *See* Pls' Compl. ¶¶ 20-21 (challenging the building, complex and neighborhood "in which the building is located"); *see Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (stressing the "need to identify with care the specific [discriminatory] practice that is at issue.")

Plaintiffs' challenge is akin that brought by the plaintiffs in *Jersey Heights Neighborhood Assoc. v. Glendening*, 174 F.3d 180 (4th Cir. 1999). In that case, the plaintiffs challenged the site selection for a highway, arguing under Section 1983 that the decision violated the Equal Protection Clause and Title VI. The plaintiffs attempted to circumvent the statute of limitations by arguing that the highway project as a whole constituted a continuing violation. *Id.* at 189. The court rejected this argument stating "[a]t bottom, [the plaintiffs'] continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights." *Id.* Further, the court noted that subsequent refusals to reconsider the location did not "revive" the limitations period for the original decision. *Id.*; *see also Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) (holding that the continuing violation theory did not apply to an alleged "failure to design and construct" a multifamily dwelling according to FHA standards because "current effects alone cannot breathe life into prior, unchanged discrimination;

... such effects in themselves have 'no present legal consequences.'"); *Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 508-09 (E.D. Va. 2002) ("the continuing violations provision does not apply in the construction context if the harm alleged is the ongoing effect of a violation that occurred outside the statute of limitations"); *Link v. Village of Wadsworth*, 1996 WL 197513 (N.D. Ill. 1996) (holding plaintiffs' Section 1983 claim based on denial of request for a zoning variance was a discrete act, not a continuing violation).

Here, Plaintiffs challenge the location of the housing development.  The decision to locate the development at 628 Western Avenue was a decision made once, in 1961.  Just like the challenged practice in *Jersey Heights* and *Garcia*, Plaintiffs' challenge to the location of the Western Avenue development is a challenge to a single instance of allegedly unlawful conduct, not a continuing violation.  *See Garcia*, 526 F.3d at 463.  Plaintiffs' segregation-related claims are barred by the statute of limitations and therefore should be dismissed with prejudice.

**E.     Plaintiffs' FHA Claims Fail**

Plaintiffs' FHA claims fail because they are not actionable and are inadequately plead.

1.     *Plaintiff's FHA Claims Are Not Actionable*[8]

Plaintiffs' FHA claims are subject to dismissal because they are post-acquisition claims of discrimination—that is, alleged discrimination during their tenancy.  *See Halprin v. The Prairie Single Family Homes of Dearborn Park Assoc.*, 388 F.3d 327, 329 (7th Cir. 2004) (granting motion to dismiss and holding that plaintiffs who had acquired property and were allegedly subsequently harassed on the basis of their religion could not state a claim under the FHA because they were not denied access to property); *Echemendia v. Gene B. Glick Management Corp.*, 2007 WL 8691996 (N.D. Ind. 2007) (relying on *Halprin* to hold that

---

[8] As discussed in Section I.D., Plaintiffs' bullying claims are not actionable under the FHA or any other statute.

plaintiff's disability discrimination claim under the FHA lacked merit as a matter of law because the plaintiff remained a tenant of the defendant at the time she filed her complaint and, therefore, "had not experienced actual or constructive deprivation" of her rental unit.)

Plaintiffs allege that they are tenants in a Housing Authority development. (*See* Pls' Compl. ¶ 3(a).)  While Plaintiffs reference the Housing Authority's "actions to evict Mr. Smith from his previous apartment," the eviction cannot serve as a basis for Plaintiffs' Complaint under the *Rooker-Feldman* doctrine. (*See infra* Section I.C.; *see also* Pls' Compl. ¶ 16.)  Absent the eviction, Plaintiffs' FHA claims are based solely on alleged post-acquisition discrimination— namely, the alleged bullying of Mr. Smith, alleged segregation, alleged rude remarks to Mrs. Smith and alleged refusal to provide services to her.  These post-acquisition claims of discrimination are not actionable under the FHA according to *Halprin* and its progeny.

2.    *Plaintiffs' FHA Claims Are Inadequately Plead*

Even if Plaintiffs' FHA claims were actionable, Plaintiffs fail to properly please a FHA claim.  Plaintiffs allege Defendants "have discriminated against Plaintiffs on the basis of (a) race [African American] and (b) handicap."  (Pls' Compl. ¶ 26.)  But, Plaintiffs fail to allege what disability Mr. Smith allegedly has.  Moreover, Plaintiffs fail to allege any adverse action under the FHA.  The only alleged adverse action is Mr. Smith's eviction, but that action cannot form the basis of a claim under the *Rooker-Feldman* doctrine.  Most importantly, Plaintiffs do not link any of the HASB's alleged wrongful actions to a discriminatory animus.  Indeed, Plaintiffs provide no factual allegations of discrimination (*e.g.*, discriminatory statements or differential treatment).  Without these allegations, Plaintiffs cannot state a claim for race or disability discrimination under the FHA.  *See Anast v. Commonwealth Apartments*, 956 F.Supp. 792, 800 (N.D. Ill. 1997) (essential element to FHA claim is intentional discrimination or discriminatory effect); *Brenston*, 2009 WL 1606935, *4 (granting the defendant's motion to dismiss a disability

discrimination claim in part because the plaintiff failed to allege a disability of that the defendant's conduct occurred on the basis of the plaintiff's disability.)  Accordingly, Plaintiffs' FHA claims should be dismissed with prejudice.

> **F.    Plaintiff's Disability Discrimination Claims Under The Rehabilitation Act And The ADA Fail**
>
> 1.    *Plaintiffs' Rehabilitation Act And ADA Claims Are Inadequately Pled*

Plaintiffs' Complaint alleges Defendants violated the Rehabilitation Act, Title II of the ADA and Title III of the ADA "in that they have discriminated against Plaintiffs on the basis of disability. Mr. Smith is an otherwise qualified individual with a disability as defined by the Act[s]. Mrs. Smith suffered discrimination because of her association with Mr. Smith, who is an otherwise qualified individual with a disability."  (Pls' Compl. ¶¶ 27-29.)  Again, Plaintiffs do not allege what disability Mr. Smith has or any actionable adverse action.  Moreover, Plaintiffs do not link any of these claims to a discriminatory animus, leaving Defendants to speculate what actions or allegations were discriminatory based on disability.  These allegations fail to meet the plausibility pleading standard established in *Twombly* and its progeny.  *See Concentra*, 496 F.3d at 776; *see also Brenston*, 2009 WL 1606935, *4 (granting motion to dismiss ADA claims because the plaintiff failed to "articulate some factual allegations that made his claim for relief plausible.")  The only conceivably health-related allegations in the Complaint pertain to Mr. Smith's eviction.  In part, Plaintiffs state that the Housing Authority "commenced legal proceedings against [Mr. Smith] when HASB knew he was hospitalized for serious surgery." (Pls' Compl. ¶ 17.)  However, this allegation does not state, nor does any allegation in the Complaint, state that the Housing Authority took any action (including the eviction) because of an alleged disability.  Further, even if the disability claims were properly pled, as described at length above, this Court does not have subject matter jurisdiction to review the state court

judgment from the eviction proceedings.  *See Rooker*, 263 U.S. at 415-16.  Therefore, Plaintiffs'

Title II claim should be dismissed with prejudice.

2.   *Plaintiffs' Title III Claim Has No Basis*

Title III of the ADA prohibits discrimination in public accommodations provided by

private entities.  42 U.S.C. §§ 12181-12189; *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S.

581, 589 (1999).  While Plaintiffs' Complaint cursorily states that "Defendant HASB is a 'public

accommodation' under Title III", this is not true.  (*See* Pls' Compl. ¶ 29.)   The Housing

Authority is a "municipal corporation" (Pls' Complaint, ¶ 4) and therefore is not a private entity

or subject to Title III.   *See* Ind. Code § 36-7-18-14 ("A housing authority is a municipal

corporation and has all the powers necessary or convenient for carrying out the purposes of this

chapter."); 42 U.S.C. § 12181(6) (defining private entity as any entity that is not a public entity).

Further, "public accommodation" is specifically defined by Congress, and while it includes

"place of lodging", it does not encompass permanent residences.   *See* 42 U.S.C. § 12181(7).

Plaintiffs' Complaint is does not include any specific allegations referencing an area that could

conceivably be a "public accommodation" and therefore, Plaintiffs fail to properly allege a Title

III claim.

**G.    Plaintiffs' Section 1981 And 1982 Claims Fail**

Section 1981 prohibits race discrimination in the making and enforcing of contracts.

*Morris v. Office Max*, 89 F.3d 411, 414 (7th Cir. 1996).  Section 1982 states, "[a]ll citizens of the

United States shall have the same right, in every State and Territory, as is enjoyed by white

citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42

U.S.C. § 1982.  The U.S. Supreme Court has described that Section 1982 is concerned with "the

right of black persons to hold and acquire property on an equal basis with white persons and [to

provide for] the right of blacks not to have property interests impaired because of their race."

-19-

*See City of Memphis v. Greene*, 451 U.S. 100, 122 (1981).[9]  "[T]he threshold inquiry under Section 1982 must focus on the relationship between the [allegedly wrongful activity] and the property interest of the [complaining parties]."  *Southend Neighborhood Improvement v. County of St. Clair*, 743 F.2d 1207, 1211 (7th Cir. 1984) (citation omitted).  The Seventh Circuit has held that the connection between the defendant's actions (or inactions) and the alleged injury must not be "too remote to support a claim of discrimination."  *Id.*.

In their Complaint, Plaintiffs claim Defendants have denied them "equal rights" under Section 1981 and 1982 and have "acted against Plaintiffs in regard to the Plaintiffs' right to own and possess housing because of the Plaintiffs' race and color."  (*See* Pls' Compl. ¶¶ 30-31.)

The Complaint does not explain how Plaintiffs were "denied" rights or how Defendants "acted against" them—other than their discussion of Mr. Smith's eviction, which is not actionable under *Rooker-Feldman*.  Plaintiffs' failure to identify an adverse action dooms their claim.  *See Southend*, 743 F.2d at 1212 (holding the allegations failed because they did not include "more than a minimal effect on their rights, and those injuries [did] not rise to the level necessary to constitute a statutory violation").  Moreover, Plaintiffs do not link their race to the alleged denied rights or adverse actions.  The only allegation in the Complaint that pertains to race has to do with unlawful segregation.  However, as explained above, Plaintiffs lack standing to bring a segregation claim under Section 1981 and 1982, and those claims are untimely.  Plaintiffs' failure to allege facts sufficient to show discriminatory animus also warrants dismissal of their Section 1981 and 1982 claims.  *See Morris v. Office Max*, 89 F.3d 411, 414 (7th Cir. 1996) (holding that one element a Section 1981 claimant must show is intent to discriminate on

---

[9] Section 1982 claims are substantially similar to Section 1981 claims, except Section 1982 does not refer to the right to make and enforce contracts, but the right "to inherit, purchase, lease, sell hold and convey real and personal property."  *CBOCS West, Inc. v. Humphries,* 128 S. Ct. 1951 (2008).

the basis of race); *Whisby-Myers v. Kiekenapp*, 293 F.Supp.2d 845, 850 (N.D. Ill. 2003) (holding intent to discriminate on the basis of race is essential to a Section 1982 claim).

H.     **Plaintiffs' Federal Constitutional Claims Fail**

Plaintiffs claim "Defendants violated Plaintiffs' right to due process and equal protection under the Fourteenth Amendment to the Constitution of the United States.... These violations under sec. 1983 arise, in part, because Defendants, acting under color of law, have violated the legal provisions in the preceding and following claims." (*See* Pls' Compl. ¶ 32.)   Again, Plaintiffs' Complaint gives Defendants no notice of what the basis of Plaintiffs' claims are or how Plaintiffs are entitled to relief.   Further, the claim seems to rely entirely on the success of other claims.   While the flaws of Plaintiffs' other claims necessarily doom their federal constitutional challenges, these challenges also fail for the following, independent reasons.

1.     *Due Process*

Plaintiffs do not specify whether they intend this claim to be substantive or procedural in nature.   Generally, due process claims are used in the housing context to challenge an eviction or other action as an unconstitutional violation of his or her property right.   In the present case, however, this Court does not have jurisdiction to hear Plaintiffs' challenges to Mr. Smith's eviction.   *See infra* Section I.C.   Further, Plaintiffs have not specified what other action Defendants took to allegedly violate their alleged due process rights.   Without more, Defendants can only speculate as to what the basis of the due process challenge is.

2.     *Equal Protection*

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 228, 239 (1976).   Defendants must have had a discriminatory purpose, and that purpose was the motivating factor in its decisions. *Arlington Heights v. Metropolitan Life Ins. Co.*, 429 U.S.

252 (1977).  Plaintiffs must prove the discrimination was intentional.  *United States v. Board of Educ.*, 11 F.3d 668 (7th Cir. 1993).

From the allegations in the Complaint, it is unclear how Plaintiffs claim they have been denied equal protection because of their race.  Absent clarification, Defendants can only assume that Plaintiffs' claim is based on the only race-related allegations in the Complaint—segregation.  Plaintiffs' claim the unlawful "concentration" of residents who are not Caucasian is the result of Defendants' "intentional acts or deliberate indifference".  (Pls' Compl. ¶ 23.)  As described above in Section II.D., however, Plaintiffs' segregation claims are untimely or lack standing.  Therefore, Plaintiffs' equal protection claim should be dismissed with prejudice.

I.     **Plaintiffs' U.S. Housing Act Claim Fails**

Plaintiffs claim that Defendants have "failed to provide Plaintiffs with housing and services required by the [United States Housing Act] to Plaintiffs as required by the Act." (*See* Pls' Compl. ¶ 33.)  This cursory statement is insufficient to survive a motion to dismiss because it is "merely a policy statement and does not provide a private right of action."  *Fincher*, 612 F.Supp.2d at 1021 (granting summary judgment in part because Plaintiff's complaint merely alleged the Housing Authority violated the Housing Act, rather than citing a specific right under the Act to create a private right of action); *see also Thomas v. Chicago Housing Authority*, 919 F.Supp. 1159, 1164 (N.D. Ill. 1986); *Hale v. Chicago Housing Authority*, 642 F.Supp. 1107, 1109 (N.D. Ill. 1986).  Because Plaintiffs have failed to assert specific rights under the Housing Act that have been violated, this claim should be dismissed with prejudice.

J.     **Plaintiffs' State Due Corse Of Law Claim Fails**

Plaintiffs allege that "Defendants have failed to provide Plaintiffs with due course of law as guaranteed to Plaintiffs by the Constitution of the State of Indiana, Article I, sec. 23." (*See* Pls' Compl. ¶ 34.)  Plaintiffs' due course of law allegation is analogous to their federal due

process claim and fails for the same reasons.  *See Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185, 1188 (Ind. Ct. App. 2001).  Similar to their federal due process challenge, Plaintiffs' claim is improperly pled and gives Defendants no information about the basis of their claim or that they are entitled to relief.  Therefore, this claim should be dismissed with prejudice.

### K.    Plaintiffs' Contract Claim Fails

Plaintiffs claim "the lease that Defendants contracted with Plaintiffs is unconscionable and illegal and, additionally and alternatively has been, is being, and will be administered by Plaintiffs in an unconscionable and illegal manner."[10]  (*See* Pls' Compl. ¶ 35.)  Mr. Smith lacks standing to bring a breach of contract claim based on the Lease because he is not named as a tenant or household member in the Lease.  (*See* Mrs. Smith's Lease Agreement attached hereto as Exhibit 1.)  To the extent Mr. Smith claims he was living with Mrs. Smith, he was doing so as an unauthorized guest with no right to enforce her Lease.  In Indiana, only the parties to a contract, those in privity with the parties or intended third-party beneficiaries have standing to enforce a contract.  *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind. Ct. App. 1984).  Mr. Smith does not claim to be in privity with Mrs. Smith or an intended third party beneficiary of Mrs. Smith's Lease.  Because Mr. Smith is not a tenant and does not allege he is in privity with Mrs. Smith or that he is an intended beneficiary of the Lease, he has no standing to assert a claim for an illegal and/or unconscionable Lease.

Plaintiffs' contract claim also includes a second major flaw.  It is inadequately pled. Plaintiffs do not state how the lease is illegal, what action(s) the Housing Authority has taken to breach the lease, or what provision of the lease has been violated.  Further, to the extent Plaintiffs claim the lease is unconscionable, they have not alleged any facts that could possibly support a

---

[10] Presumably, Plaintiffs intended to argue that the lease "will be administered" by Defendants, not "by Plaintiffs in an unconscionable and illegal manner." (*See* Pls' Compl. ¶ 35.)

finding that "no sensible man not under delusion, duress or in distress would make [the lease], and such as no honest and fair man would accept," which would be require to establish such a claim. *Progressive Constr. & Eng. Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind. App.1989). As a result, Plaintiffs' state law contract claim should be dismissed with prejudice.

### L.   Plaintiffs' Habitability Claim Fails

Plaintiffs claim that under Indiana and municipal law, "the Defendants failed to provide Plaintiffs with habitable premises to which Plaintiffs were entitled." (*See* Pls' Compl. ¶ 36.) No state or local law is identified. Defendants can only assume that Plaintiffs intend to bring this claim under Indiana Code Section 32-31-8-5, which sets forth landlord obligations under rental agreements. In relevant part, this code section requires that a landlord maintain electrical, plumbing, heating and cooling and other systems and items in "good and safe working condition." Ind. Code § 32-31-8-5(4). However, while the Complaint alleges that Plaintiffs' apartment and building did not meet standards and that they complained about this to no avail, Plaintiffs do not state what the problems were, when they complained or whether they waited a reasonable time to allow Defendants to repair the problem. Ind. Code § 32-31-8-6 (describing that a private right of action can be brought to ensure a landlord's compliance with statutory obligations, but not before the tenant gives notice of the problems and waits a reasonable time for the problem to be repaired.) Without more, Plaintiffs have made no "showing" of entitlement to relief and this claim should be dismissed. *Twombly*, 550 U.S. at 555.

### M.   Plaintiffs' Third Party Beneficiary Claim Fails

Plaintiffs claim that the Defendants "have breached contracts of which the Plaintiffs are intended third-party beneficiaries." (*See* Pls' Compl. ¶ 37.) Notably, Plaintiffs make no mention of any contract in the Complaint, aside from Plaintiffs' lease. This failure dooms the third party beneficiary claim, as Defendants are left only to speculate what contract and what provision of

that contract was allegedly breached.  *Fincher*, 612 F.Supp.2d at 1023.  As a result, Plaintiffs'
third party beneficiary claim should be dismissed with prejudice.

> **N.    Plaintiffs' Title VI Claim Fails**

Plaintiffs allege that "Defendants have violated the rights of Plaintiffs to be free of
discrimination on the basis of race or color by recipients of federal financial assistance, as
guaranteed by Title VI...and implementing rules."  (*See* Pls' Compl. ¶ 38.)  Plaintiffs do not cite
a specific "implementing rule[]" nor do they tie this claim to any specific allegations in the
Complaint.[11]  Generally, Title VI of the Civil Rights Act of 1964 prohibits recipients of federal
funds from discriminating based on race, color or national origin.  42 U.S.C. § 2000d.  The
legislature does not define the term discrimination, though courts have interpreted it basically to
mean a violation of equal protection.  *Laufman v. Oakley Building & Loan, Co.*, 408 F.Supp.
489, 498-501 (S.D. Ohio 1976); *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1184-87
(11th Cir. 1983).

As pled, the only allegations in Plaintiffs' Complaint that have any possible tie to race
discrimination are the segregation-type allegations wherein Plaintiffs claim that Plaintiffs'
building, the complex in which it is located, and the surrounding neighborhood is "populated
overwhelmingly by residents who are African-American and not Caucasian" and that this
concentration exists because of the "intentional actions or deliberate indifference of Defendants
or their predecessors in office."  (*See* Pls' Compl. ¶¶ 20-23.)  Not only are these allegations
overly vague and conclusive, Plaintiffs do not have standing to assert this claim, and further, it is
barred by the statute of limitations.  (*See infra* Section II.D.)

---

[11] Plaintiffs cannot maintain this claim to enforce Title VI regulations.  Title VI regulations may only be
enforced against the Housing Authority by HUD (the federal funding agency) through a termination-of-funding
sanction.  *Alexander v. Sandoval*, 532 U.S. 275 (2001).

## <u>CONCLUSION</u>

Plaintiffs have improperly named Ms. Leonard-Dent, the Commissioners and the Board as Defendants.  Their segregation claims lack merit because they are untimely and/or because Plaintiffs lack standing to assert those claims.  Plaintiffs' FHA claims lack merit because they are post-acquisition claims of discrimination.  Mr. Smith's eviction claims are barred by the *Rooker-Feldman* doctrine.  Plaintiffs' bullying claims are not actionable.  Plaintiffs' claim under Title II of the ADA lacks merit because the HASB is not a "private entity."  Mr. Smith lacks standing to bring a breach of contract claim based on Mrs. Smith's lease.  And, none of Plaintiffs' claims are properly plead, leaving Defendants with no notice of the basis for their claims.  As a result, Defendants respectfully request that Plaintiffs' claims against them be dismissed with prejudice.

Respectfully submitted,

/s/ Michael P. Palmer
Michael P. Palmer (25199-71)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana 46601
Telephone: (574) 233-1135
Email: Michael.Palmer@btlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing ***Brief in Support of Defendant Housing Authority's, Marva Leonard-Dent's and the Commissioners' Motion to Dismiss*** was filed and served upon the following, on this 2nd day of December, 2009, via ECF:

> Kent Hull
> INDIANA LEGAL SERVICES, INC. 401 E. Colfax
> Suite 116
> Commerce Center
> South Bend, IN 46617
>
> Aladean M. DeRose
> 227 W. Jefferson Blvd., Suite 1900
> South Bend, IN 46601

/s/ Michael P. Palmer

SBDS01 KCLARK2 319133v2

-27-