## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM SMITH AND | ) | |
| LUBIRTA SMITH | ) | |
| | ) | |
| PlaintiffS, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:09-CV-330 |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| SOUTHBEND, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant Stephen J.
Luecke's Motion to Dismiss Complaint as to Him (DE #16), filed by
Defendant Stephen J. Luecke on October 29, 2009; (2) the Motion to
Dismiss Under Rule 12(b)(6) (DE #24), filed by Defendant Shaun
Donovan, Secretary of the United States Department of Housing and
Urban Development, on December 9, 2009; (3) The Housing
Authority's, Marva Leonard-Dent's, and the Commissioners' Motion to
Dismiss (DE #20), filed by Defendants The Housing Authority of
South Bend, Marva J. Leonard-Dent, Susie Harvey-Tate, Earl L.
Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad,
on December 2, 2009; and (4) the Request for Judicial Notice (DE
#22), filed by Defendants The Housing Authority of South Bend,

Marva J. Leonard-Dent, Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad on December 2, 2009. For the reasons set forth below: (1) Defendant Stephen J. Luecke's Motion to Dismiss Complaint as to Him (DE #16) is **GRANTED** and the claims against him are **DISMISSED WITHOUT PREJUDICE;** (2) the Motion to Dismiss Under Rule 12(b)(6) (DE #24) is **GRANTED** and the claims against Defendant Shaun Donovan, Secretary of the United States Department of Housing and Urban Development are **DISMISSED WITHOUT PREJUDICE**; (3) The Housing Authority's, Marva Leonard-Dent's, and the Commissioners' Motion to Dismiss (DE #20) is **GRANTED** and the Court notes that the claims against the Housing Authority of South Bend are **DISMISSED WITHOUT PREJUDICE** while the claims against the Board of Commissioners, Marva J. Leonard-Dent, Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad are **DISMISSED WITH PREJUDICE**; and (4) the Request for Judicial Notice (DE #22) is **GRANTED IN PART AND DENIED IN PART WITH LEAVE TO REFILE.**

BACKGROUND

On July 23, 2009, the Plaintiffs, William Smith and Lubirta Smith (collectively, the "Smiths"), filed their Verified Complaint With Jury Demand. (DE #1; Comp.) The Complaint describes the Smiths as married, African-American adults, who reside as tenants at 628 Western Avenue, South Bend, IN 46601 (the "Property"). (*Id.*

at 2; Comp. ¶ 3.)  The Property is owned by the Housing Authority of South Bend ("HASB").  (*Id.*)  The Complaint further describes William Smith as "an individual with a disability or handicap in that he has significant limitations to major life activities, has a record of such limitations, and is perceived by Defendant HASB to have such limitations."  (*Id.*)  However, the Complaint does not identify what disability or handicap William Smith has.

The Smiths allege that the apartment in which they live and the Property as a whole fails, and has failed, to meet the standards of habitability and peaceable enjoyment, and that the HASB staff members have failed to remedy the problems of which the Smiths have complained.  (*Id.* at 3; Comp. ¶¶ 12-14.)  Because of those complaints, the Smiths claim that the HASB staff members retaliated against them by failing to take remedial action and "by the manner in which HASB staff members treated [the Smiths]."  (*Id.* at 4; Comp. ¶ 15.)  The Smiths point out that some of these acts took place before they were married and prior to William Smith residing with Lubirta Smith in her apartment in the Property.  (*Id.*; Comp. ¶ 16.)

The Smiths also allege that, prior to their marriage, the HASB evicted William Smith from his previous apartment while he was "seriously ill" and commenced legal proceedings against him when the HASB knew he was "hospitalized for serious surgery" because he had made repeated complaints about the conditions and services at

the Property. (*Id.*; Comp. ¶¶ 16-17.)

The Smiths claim that the HASB staff members retaliated against Lubirta Smith "because of her association with Mr. Smith" and because of her advocacy on his behalf both before and after their marriage. (*Id.*; Comp. ¶ 18.) They assert that this retaliation was taken in "the form of refusal to provide service and rude remarks to her." (*Id.*)

The Smiths also allege that the HASB staff members "acquiesced in the bullying of Mr. Smith by at least one other resident and did nothing to intervene and stop the bullying." (*Id.*; Comp. ¶ 19.)

Finally, the Smiths allege that the Property, the HASB complex in which the building is located, and the neighborhood in general are all "populated overwhelmingly by residents who are African American" or Latino and that the "concentration of non-Caucasion residents" is "far out of proportion to the corresponding population figures for the City of South Bend or the County of St. Joseph." (*Id.* at 5; Comp. ¶¶ 20-22.) The Smiths claims that this "concentration" occurred and remained because of the defendants' "actions and acquiesce" and is the result of "intentional actions or deliberate indifference." (*Id.*; Comp. ¶ 23.)

The Complaint, which premises subject-matter jurisdiction on 28 U.S.C. § 1331 and 28 U.S.C. § 1367, alleges fifteen claims seeking vindication of rights "guaranteed to [the Smiths], as residents of a federally funded public housing project, by the Fair

Housing Act, as amended, 42 U.S.C. sec. 3601 et seq.; the Civil Rights Act of 1964, 42 U.S.C. sec. 601 et seq.; the Americans with Disabilities Act, 42 U.S.C. secs. 12131 et. Seq. And 12181 et. Seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. sec. 794; the United States Housing Act, as amended, 42 U.S.C. sec. 1437 et seq.; and the Fourteenth Amendment to the Constitution of the United States.[1]"  (DE #1; Comp. ¶ 1.)  The various defendants sued by the Smiths include: (1) the HASB; (2) Marva J. Leonard-Dent, the Executive Director of the HASB; (3) the Board of Commissioners of the HASB; (4) the individual members of the Board of Commissioners of the HASB (Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad); (5) Stephen J. Luecke, the Mayor of the City of South Bend; and (6) Shaun Donovan, the Secretary of United States Department of Housing and Urban Development ("HUD").  (*Id*. at 2-3; Comp. ¶¶ 4-9.)  The Complaint indicates that all Defendants are "sued for acts under color of law." (*Id*. at 3; Comp. ¶ 11.)  For each claim, the Smiths seek compensatory and exemplary damages, and the Complaint also requests equitable relief.


DISCUSSION

 As an initial matter, the Court notes that a strikingly

---

[1] The Smiths have also invoked supplemental jurisdiction to plead claims under Indiana law.

similar case is currently pending before the Honorable Theresa L. Springmann in the United States District Court Fort Wayne Division. The plaintiffs in *Magee et al. v. Housing Authority of South Bend*, No. 3:09-CV-337, filed an almost identical complaint against the same defendants named in this lawsuit four days after the instant complaint was filed. On July 28, 2010, Judge Springmann issued an order granting dismissal of various parties and setting forth a time frame in which the plaintiff was granted leave to file a motion to amend her complaint and a proposed amended pleading to clarify her cause of action as to certain defendants. *Magee v. Housing Authority of South Bend*, 2010 WL 3000660, 7 (N.D.Ind. July 28, 2010) (3:09-CV-337; DE #56.). The Court notes that much of Judge Springmann's sound reasoning applies equally to this case, and the Court has quoted from Judge Springmann's dismissal order liberally as applicable.

Federal Rule of Civil Procedure 8(a) provides, in part: "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the court must "take the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor from those allegations." *Abcarian v. McDonald*, 2010 WL 3189153, *1 (7th Cir.

2010) (citing *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 (7th Cir. 2010)). Dismissal under Rule 12(b)(6) is required if the complaint fails to describe a claim that is plausible on its face. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009)).

A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff has an obligation under Rule 8(a)(2) to provide grounds of his entitlement to relief, which requires more than labels and conclusions. *Id*. Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level. *Id*.

The Seventh Circuit has instructed that plaintiffs may not "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit)" but must provide "some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The court clarified the standard for dismissal under Rule 12(b)(6) as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the

> plaintiff's claim. Third, in considering the
> plaintiff's factual allegations, courts should
> not accept as adequate abstract recitations of
> the elements of a cause of action or
> conclusory legal statements.

*Id.*

Generally, in ruling on a motion to dismiss under Rule 12(b)(6), a court may consider only the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). In the usual case, therefore, if a party moving for a such dismissal submits documents with its motion, the Court either must ignore the documents or convert the motion to one for summary judgment. See *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, the bar is not absolute and "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). The Seventh Circuit has held that "this rule includes a limited class of attachments to Rule 12(b)(6) motions that are central to [the plaintiff's] claim, especially when the court must interpret a contract to determine whether the plaintiff stated a claim." *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 731 (7th Cir. 2005) (citation and quotation marks ommitted).

Here, the HASB Defendants attach a copy of the lease between Lubirta Smith (formerly Blackmon) and the HASB to their Motion to Dismiss to show that William Smith is not identified as a tenant or a household member in the lease mentioned. (DE #21-2.) The HASB

Defendants point out the lease is expressly referenced and relied on in the Compliant.  Indeed, the Smiths do claim that "the lease Defendants contracted with Plaintiffs is unconscionable and illegal and, additionally and alternatively, has been, is being, and will be administered . . . in an unconscionable and illegal manner." (DE #1, p. 7; Comp. ¶ 35.)  As such, the Court may be properly considered by the Court when ruling on the motions to dismiss.

Defendant Stephen J. Luecke, Mayor of the City of South Bend, IN

The Smiths have named Stephen J. Luecke ("Mayor Luecke") as a defendant in this action, claiming that he "is responsible for appointing or nominating for appointment all or some members of the HASB Board of Commissioners."  (DE #1, p. 3; Comp. ¶ 8.)  The Smiths allege that Mayor Luecke "failed to appoint members to the HASB Board of Commissioners in a manner consistent with his duty to appoint board members who act in compliance with law."  (*Id.* at 8; Comp. ¶ 39.)  Mayor Luecke is sued for "acts under color of law." (*Id.* at 3; Comp. ¶ 11.)

Mayor Luecke has filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim against him.  (DE #17.)  In that motion, Mayor Luecke notes that, while he does have the authority to appoint members of the HASB Board of Commissioners, those members and related staff persons are not employees of the Mayor. (*Id.* at 3-4.)  He also points out that the Smiths do not allege

that Mayor Luecke himself participated in, directed, approved, or knew about the conduct of the alleged wrongful conduct of the HASB staff or that he had any personal acquaintance with or connection to the Smiths. (*Id*. at 5.)

In their Memorandum of Law in Opposition to Defendant Mayor Stephen J. Luecke's Motion to Dismiss (DE #18), the Smiths cite to Mayor Luecke's authority to appoint and remove the HASB Board of Commissioners under Indiana Code §§ 36-7-18-5 and 36-7-18-9 to show that because he has a "duty to monitor the performance of the Commissioners and to remove them for 'inefficiency, neglect of duty, or misconduct in office'" he is vicariously liable for the alleged wrongful conduct on the part of the HASB. (*Id*. at 6.)

Judge Springmann accurately sums up the reasons the Smiths allege no clear theory of recovery in their Complaint against Mayor Luecke:

> [T]he Complaint does not reference the [statutory provisions cited above], and neither the Complaint nor the Plaintiff's Memorandum of Law in Opposition to Defendant Mayor Luecke's Motion references any private right of action to enforce the mayor's statutory duties and powers. Furthermore, there is no allegation that Defendant Mayor Luecke was involved in any of the alleged wrongful conduct or that he engaged in any intentional discriminatory conduct related to the Plaintiff.

Overall, the Smiths' claims against Mayor Luecke are sketchy, conclusory, and, for the most part, simply place labels on the claims asserted. The Complaint does not give him fair notice of

what the Smiths' claims are against him.  Furthermore, as Judge Springmann points out, the allegations in the Complaint do not show that it is plausible that the Smiths are entitled to relief.  As such, Mayor Luecke's Motion to Dismiss (DE #16) will be granted.

## Shaun Donovan, Secretary of HUD

The Smiths have named Shaun Donovon ("Donovan") as a defendant in this action, claiming that "the Secretary of HUD [] has responsibility for ensuring that administration of federally funded aspects of HASB activities are in compliance with federal law, together with HUD rules and directives." (DE #1, p. 3; Comp. ¶ 9.) The Complaint indicates that all defendants are "sued for acts under color of law" and seeks compensatory and exemplary damages for "each Cause of Action." (*Id*. at 3, 8; Compl. ¶¶ 11, 41.)  The Complaint also seeks equitable relief.  (*Id*. at 8-9; Comp. ¶ 42) Donovan is sued in his official capacity, and the claims are deemed to be against the United States.[2]  The Smiths claim that the Secretary of HUD "failed to exercise oversight over the remaining Defendants so that HASB facilities, programs and services are administered in compliance with law." (*Id*. at 8; Comp. ¶ 40.)

---

[2] "Regardless of whether or not the United States is a named defendant, a suit is considered to be against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration."  *Clark v. U.S.*, 691 F.2d 837, 839-40 (7th Cir. 1982) (citation and internal quotation marks omitted).

The Secretary of HUD has filed a motion to dismiss under Rule 12(b)(6) arguing that the Complaint fails to state a claim against HUD and that "the United States and it[s] officers and agencies are immune from suit, absent an express statutory waiver of sovereign immunity." (DE #25, p. 3.) The Secretary of HUD is correct in noting that the Complaint does not cite to any specific statute waiving sovereign immunity by the United States.

In their Memorandum of Law in Opposition to Motion to Dismiss Filed by Defendant Shaun Donovan, Secretary of the United States Department of Housing and Urban Development (HUD), the Smiths cite to *Hills v. Gautreaux*, 425 U.S. 284 (1976) and *Gautreaux v. Romney*, 448 F. 2d 731 (7th Cir. 1971) as providing the basis for their claims. (DE #29, pp. 2-3.) The Smiths also cite to 5 U.S.C. § 702 of the Administrative Procedure Act ("APA")in support of their claims.

The Federal Government cannot be sued without first specifically consenting to such suit. *U.S. v. Navajo Nation*, 129 S.Ct. 1547, 1551 (2009) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). In instances where consent has been given and Congress has waived sovereign immunity, the waiver must be narrowly construed. *Gatimi v. Holder*, 606 F.3d 344, 350 (7th Cir. 2010) (citing *McMahon v. U.S.*, 342 U.S. 25, 27 (1951)). Such waiver must be unequivocally expressed and cannot be implied. *Ogden v. U.S.*, 758 F.2d 1168, 1177 (7th Cir. 1985). In a suit seeking damages, a

"plaintiff must be able to point to a constitutional, statutory, or regulatory provision that can 'fairly be interpreted as mandating compensation.'" *U.S. v. Norwood*, 602 F.3d 830, 834 (7th Cir. 2010) (citing *U.S. v. Mitchell*, 463 U.S. 206, 217 (1983)).

However, in the context of sovereign immunity, not all suits against federal officials for injunctive relief are deemed suits against the United States.  See *Clark v. U.S.*, 691 F.2d 837, 839 (7th Cir. 1982).  In the series of cases the Smiths apparently rely on to form the basis of their Complaint, African American tenants in Chicago brought actions against the Chicago Housing Authority ("CHA") and HUD claiming that, over a period of fifteen years, the CHA "deliberately selected [public housing] sites to 'avoid the placement of Negro families in white neighborhoods'" and that HUD had "'assisted in the carrying on and continues to assist in the carrying on of a racially discriminatory public housing system within the City of Chicago' by providing financial assistance and other support for CHA's discriminatory housing projects." *Hills v. Gautreaux*, 425 U.S. 284, 286-87 (1976).  In the preceding phases of the litigation, the lower courts found that the CHA had violated the respondents' constitutional rights by "selecting public housing sites and assigning tenants on the basis of race" and that HUD had committed violations "by knowingly sanctioning and assisting CHAs racially discriminatory public housing program," *Id.* at 287-89 (citing *Gautreaux v. Chicago Housing Authority*, 296 F.Supp. 907

(D.C.Ill. 1969) and *Gautreaux v. Romney*, 448 F.2d 731, 739-40 (7th Cir. 1971)).   The cases were eventually consolidated and the parties were ordered to formulate "a comprehensive plan to remedy the past effects of unconstitutional site selection procedures." *Id*. at 290.   The question presented to the Supreme Court concerned only whether the lower court had the authority to order HUD to take remedial action outside the city limits of Chicago.   *Id*. at 296. The Supreme Court concluded that, when parties are found to have violated the Constitution, federal courts do have the authority to order them to undertake remedial efforts beyond the municipal boundaries of the city where the violation occurred.   *Id*. at 298-99.

It is important to note, however, that the Government abandoned the issue of sovereign immunity on appeal in *Romney*, 448 F.2d at 735.   The Seventh Circuit briefly touched on the subject and noted that the doctrine of sovereign immunity is not a bar to a suit where the "alleged unconstitutional and unauthorized conduct by a federal officer" is challenged.   *Id*. (citing *Dugan v. Rank*, 372 U.S. 609 (1963)).   In *Dugan* the Supreme Court set out the general rule, stating that:

> a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act . . . . [T]he recognized exceptions to the above general rule . . . are (1) action by

> officers beyond their statutory powers and (2)
> even though within the scope of their
> authority, the powers themselves or the manner
> in which they are exercised are
> constitutionally void.

*Dugan v. Rank*, 372 U.S. 609, 620-22 (1963) (internal citations and quotation marks omitted). In other words, suits may be brought against the sovereign when government officers are alleged to have acted beyond their legal authority or pursuant to an unconstitutional statute but not when the officer has acted within his statutory authority or according to the Constitution. Yet, a suit may still fail, "as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691, n. 11 (1949).

In their Response, the Smiths also point to the Administrative Procedure Act ("APA") which waives sovereign immunity for most forms of injunctive relief. Section 702 of the APA provides:

> An action in a court of the United States
> seeking relief other than money damages and
> stating a claim that an agency or an officer
> or employee thereof acted or failed to act in
> an official capacity or under color of legal
> authority shall not be dismissed nor relief
> therein be denied on the ground that it is
> against the United States or that the United
> States is an indispensable party.

5 U.S.C. § 702. The Supreme Court has treated § 702 is generally applicable. See *Blagojevich v. Gates*, 519 F.3d 370 (7th Cir. 2008) (citing Bowen v. Massachusetts, 487 U.S. 879 (1988).[3]

Here, the Smiths have not shown that sovereign immunity has been specifically waived, nor does the Complaint adequately allege that they are entitled to proceed with any claim against HUD. As the government points out, there is no allegation that HUD provided funding despite knowing that the HASB engaged in segregation. There is no suggestion that HUD was ever asked to investigate the claims against the HASB or that the concerns described by the Smiths were ever brought to the attention of HUD. The only claim against HUD is that they failed to exercise oversight over the HASB. The Complaint seeks monetary damages on each count and also requests injunctive relief. From the facts alleged in the Complaint, it is not clear that the injunctive relief sought is applicable or that the claims against HUD fall within any exception to sovereign immunity. As such, the Motion to Dismiss (DE #24) will be granted.

---

[3] In *Blagojevich*, the court went on to note that it was far from clear that the claim was unsupported by the APA. "The scope of § 702 is demonstrated not only by its language but also by its location in the same chapter as 5 U.S.C. § 704, which states: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Any "final agency action" comes within § 704 if either some statute other than the APA makes an action reviewable . . . or there is no alternative remedy specified by statute. *Blagojevich v. Gates*, 519 F.3d 370, 372 (7th Cir. 2008)

## The HASB, Marva Leonard-Dent, and the Board of Commissioners Generally

### Judicial Notice

As an initial matter, the Court notes that the HASB, the HASB Board of Commissioners, the HASB Executive Director Marva J. Leonard-Dent, and the individual Commissioners of the HASB (Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B. Toothaker, and Gladys Muhammad) (collectively the "HASB Defendants") have jointly filed a Request for Judicial Notice (DE #22.) The HASB Defendants request that judicial notice be taken of a certified copy of a "Prejudgment Order of Possession of Real Property" awarding possession of apartment #416 at 628 Western Avenue to the HASB and directing the Sheriff to serve an order on William Smith and seize the property. (DE #22-2.) The HASB Defendants also request that the Court take judicial notice of newspaper articles and minutes from the South Bend Common Counsel meeting to support their statute of limitations argument as applied to the Smiths' claims of segregation.

"A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). The Seventh Circuit has stated that it is proper to take judicial notice of such things as historical documents, documents contained in the public record, and reports of

administrative bodies, and state court decisions.  See *520 South Michigan Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1138, n. 14 (7th Cir. 2008) (citing *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006).

Here, to the extent that the Court will reference the "Prejudgment Order of Possession of Real Property" to discuss Mr. Smith's wrongful eviction claims, the request for judicial notice is **GRANTED**.  However, because the Court will grant the motion to dismiss as to the segregation claims without reaching the statute of limitations issue, the Court will **DENY WITH LEAVE TO REFILE** the request to take judicial notice of the newspaper articles and meeting minutes.  The HASB Defendants may refile this motion at a later date if necessary.

<u>Motion to Dismiss for Failure to State a Claim</u>

The HASB Defendants filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (DE #20).  In their Memorandum of Law in Opposition to Motion to Dismiss (DE #30), the Smiths again cite to the *Gautreaux* litigation described above as the "precedential basis" for the claims against the HASB Defendants.  (*Id*. at 3.)  The Smiths state they have pleaded a plausible *Gautreaux* claim because they have alleged "illegal use of federal financial assets to be used in connection with or in support of the racially discriminatory

aspects of the [South Bend] public housing system." (*Id.*)

The HASB Defendants are correct in noting that the allegations in the Complaint do not establish a proper claim by way of *Gautreaux*. As stated above, the *Gautreaux* plaintiffs brought suit against the CHA claiming that, over a period of fifteen years, the CHA "deliberately selected [public housing] sites to 'avoid the placement of Negro families in white neighborhoods.'" *Hills v. Gautreaux*, 425 U.S. 284, 286-87 (1976). In the lower phases of the litigation, the CHA moved to dismiss several counts of the complaint arguing that the plaintiffs failed to state a claim upon which relief could be granted because it was not alleged that the CHA implemented their public housing site selection policy with the deliberate intent to segregate the races. *Gautreaux v. Chicago Housing Authority*, 265 F.Supp. 582, 584 (D.C.Ill. 1967). In granting the CHA's motion to dismiss[4], the court stated:

> To accept plaintiffs' contention that allegation and proof of an intent to discriminate among the races is unnecessary is to conclude that the mere placement of public housing projects that will in all probability be occupied largely by tenants of a specific race in neighborhoods containing a significant

_____

[4] The court held that: "[P]laintiffs must in fact prove, or prove facts from which the inference necessarily follows, that defendants were prompted in their selection of sites at least in part by a desire to maintain concentration of Negroes in particular areas or to prevent them from living in other areas. A public housing program, conscientiously administered in accord with the statutory mandates surrounding its inception and free of any intent or purpose, however slight, to segregate the races, cannot be condemned even though it may not affirmatively achieve alterations in existing patterns of racial concentration in housing, however desirable such alterations may be. A showing of affirmative discriminatory state action is required." *Gautreaux v. Chicago Housing Authority*, 265 F.Supp. 582, 584 (D.C.Ill. 1967).

-19-

> number of residents of the same race is in
> itself an act of discrimination forbidden by
> the Fourteenth Amendment, regardless of the
> many other factors, imposed here by statute,
> such as need, cost, and rehabilitation of
> deteriorating neighborhoods. The Constitution
> compels no such conclusion; rather it commands
> only that defendants administer the site
> selection aspect of their housing program
> untainted by any design to concentrate Negro
> or white tenants in some areas to the
> exclusion of other areas.

*Id*.

Here, the factual allegations in the Smiths' Complaint are stated in only general terms as applied to their *Gautreaux* arguments. The Smiths generally allege that the Property, the HASB complex in which the building is located, and the neighborhood in general are all "populated overwhelmingly by residents who are African American" or Latino and that the "concentration of non-Caucasion residents" is "far out of proportion to the corresponding population figures for the City of South Bend or the County of St. Joseph." The Smiths further claim that this "concentration" occurred and remained because of the HASB Defendants' "actions and acquiesce" and is the result of "intentional actions or deliberate indifference." Such conclusory allegations coupled with sketchy details overall are simply not enough to provide the HASB Defendants with fair notice of the Smiths' claims and the grounds of her entitlement to relief. As such, the Motion to Dismiss (DE #20) these claims will be granted.

<u>Mr. Smith's Wrongful Eviction Claims</u>

In their Complaint, the Smiths allege that, prior to their marriage, the HASB evicted William Smith from his previous apartment while he was "seriously ill" and commenced legal proceedings against him when the HASB knew he was "hospitalized for serious surgery" because he had made repeated complaints about the conditions and services at the Property. (DE #1, p. 4; Comp. ¶¶ 16-17.) The HASB Defendants contend that, under the *Rooker-Feldman* doctrine, this Court does not have jurisdiction over any of the claims that are inextricably intertwined with the state court eviction action. (DE #21, p. 7.) In their response, the Smiths cite to *Polzin v. Unifund CCR Partners*, 2009 WL 2474668 (E.D. Wis., Aug. 21, 2009) and contend that *Rooker-Feldman* is not a bar because "no state court judgment itself is under attack by [the Smiths]." (DE #30, p. 5.)

The *Rooker-Feldman* doctrine prohibits federal district courts from reviewing state court civil judgments, including all claims that are inextricably intertwined with those judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine is based upon recognition of the fact that lower federal courts generally do not have the power to exercise appellate review over state court decisions. In *Rooker*, the Supreme Court held that even if a state court decision was wrong,

only the Supreme Court has the power to reverse or modify that judgment, since the jurisdiction of federal district courts is strictly original. *Rooker*, 263 U.S. at 415-16. Similarly, the Supreme Court in *Feldman* held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. This circuit has consistently emphasized that "[t]aken together, *Rooker* and *Feldman* stand for the proposition that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993) (quotation omitted). "In order to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the alleged injury by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). "If the alleged injury resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal court lacks jurisdiction." *Id.* The key element in a *Rooker-Feldman* analysis is whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). "A plaintiff may not circumvent the effect of the *Rooker-Feldman*

doctrine simply by casting [a] complaint in the form of a federal civil rights action." *Maple Lanes, Inc., v. Messer*, 186 F.3d 823, 825 (7th Cir. 1999). The Seventh Circuit has held that "[i]f the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir. 2001) (citation omitted).

The Court agrees with the HASB Defendants that the Smiths do not explain why Mr. Smith's eviction claims as described above are not inextricably intertwined with the state court eviction determination. As such, the Motion to Dismiss (DE #20) these claims will be granted.


Bullying Claims

The Smiths allege that the HASB staff members "acquiesced in the bullying of Mr. Smith by at least one other resident and did nothing to intervene and stop the bullying." (DE #1, p. 4; Comp. ¶ 19.) The HASB Defendants argue that the Smiths' bullying claims are not actionable because the alleged tenant-on-tenant harassment does not give rise to landlord liability. (DE #21, p. 8.) In their response, the Smiths argue that "the failure of HASB to act and intervene when HASB learned of it resulted in HASB's becoming a co-intimidator or a ratifier of the intimidation." (DE #30, p.

5.)

In Indiana, however, "[a] civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means. *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind.App. 2009). It has been made clear that in order to state a claim upon which relief can be granted, a plaintiff "must allege a concerted action in the commission of a tort that resulted in damages." *Id*.

The Court can discern no actionable claim against the HASB on the face of the Complaint in regard to the alleged tenant-on-tenant bullying of Mr. Smith. Moreover, although the Smiths now try to recast their bullying allegations into an allegation of conspiracy, the HASB Defendants are correct in noting that no such claim is discernable from the face of the complaint. As such, the Motion to Dismiss (DE #20) these claims will be granted.

### Third-Party Beneficiary Claim

The Smiths allege that the HASB Defendants have "breached contracts of which [the Smiths] are intended third-party beneficiaries." (DE #1, p. 8; Comp. ¶ 37.) The HASB Defendants argue that they are left to speculate as to what contract and what provision of the contract was allegedly breached so the claims should be dismissed. (DE #21, p. 24-25.) In their response, the Smiths state that the funding agreements between the HASB and HUD

form the basis for the contracts and that William Smith may sue as "an intended beneficiary of the funding agreements." (DE #30, p. 5.)

However, the Court notes that the HASB Defendants correctly point out that, aside from Lubirta Smith's lease, the Complaint does not mention any other contract and the funding agreement is not referenced in the Complaint. The Complaint is deficient. See *Fincher v. South Bend Heritage Foundation*, 606 F.3d 331, 336 (7th Cir. 2010) (Plaintiff "must point to specific regulations (or contract provisions) that are being violated in this case to give rise to a cause of action.") As such, the Motion to Dismiss (DE #20) these claims will be granted.

## The FHA, Title III, U.S. Housing Act, and Breach of Contract Claims

The HASB Defendants correctly point out that the Smiths have failed to oppose their motion to dismiss in relation to several of the claims and have thus conceded each of those claims. *See Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643 (7th Cir. 2006). The Court notes generally that, for many of the reasons described in the preceding sections, the Complaint consists of conclusory allegations coupled with sketchy details overall. Without wading through the details regarding each of the conceded claims, it is sufficient to note that the Complaint does not

provide grounds of the Smiths' entitlement to relief.  See *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plaintiffs may not "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit)" but must provide "some specific facts to ground those legal claims).  As such, the Motion to Dismiss (DE #20) these claims will be granted.

<u>The HASB Board of Commissioners</u>

The Smiths have named the HASB Board of Commissioners (the "Board") as a defendant in this lawsuit claiming that the Board "exercis[es] control over HASB and appoints and supervises the HASB Executive Director."  (DE #1, p. 2; Comp. ¶ 6.)  The HASB Defendants have moved to dismiss the claims against the Board because the Board is not a separate entity that may sue or be sued.  (DE #21, p. 7.)  In response, the Smiths argue that the claims against the Board should not be dismissed because they are uncertain of the relationship between the Board mandated by Indiana statute and the Resident Advisory Boards required by HUD rules, because they seek broad equitable relied to remedy violations of federal and state law, and because "there is a possibility that the actions by the [Board] are *ultra vires* and void.  (DE #30, pp. 3-4.)

Federal Rule of Civil Procedure 17(b) provides that capacity

to sue or be sued is determined as follows:

> (1) for an individual who is not acting in a
> representative capacity, by the law of the
> individual's domicile;
> (2) for a corporation, by the law under which
> it was organized; and
> (3) for all other parties, by the law of the
> state where the court is located . . . .

Fed.R.Civ.P. 17(b). While Indiana law provides that a housing authority may sue or be sued, there is no law specifically providing that a housing authority's board of commissioners may also be sued. See Ind. Code § 36-7-18-15.

The Smiths have provided no authority showing that the Board is an entity that can be sued. The Court agrees with the HASB Defendants that the Smiths' arguments are underdeveloped and that the claims would be redundant. As such, the Motion to Dismiss (DE #20) these claims will be granted.

## The HASB Executive Director Marva J. Leonard-Dent and the individual Commissioners of the HASB

In addition to charges against the HASB and the Board, the Smiths have included individual charges against defendants Marva Leonard-Dent, Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert Toothaker, and Gladys Muhammad. The Smiths refer to Marva Leonard-Dent as Executive Director of the HASB, noting that she "has responsibility for the management, direction, and oversight of HASB activities, services, and properties." (DE #1, p. 2; Comp. ¶

5.)  The other named defendants are simply referred to as "members of the HASB Board of Commissioners." (*Id.* at 3; ¶ 7.)  The Smiths do not specify whether these defendants have been sued in their individual or official capacities (or both) but do note that all defendants "are sued for acts under color of law." (*Id.;* Comp. ¶ 11.)

"In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990) (citing *Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988), *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985)).  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  If a plaintiff brings suit against a government entity, any claim against an officer of that entity in his or her official capacity is redundant and should be dismissed.  *Comer v. Housing Auth. of City of Gary, Ind.*, 615 F.Supp.2d 785, 789-90 (N.D. Ind. 2009); see also *Graham*, 473 U.S. at 165-66; *Schmidling v. City of Chicago*, 1 F.3d 494, 495 n.1 (7th Cir. 1993).

In their memorandum in opposition, the Smiths do not deny

that these defendants are being sued in their official capacities but instead claim that the individual commissioners "acted individually in making decisions of which [the Smiths] complain and allege violations (or in failing to act as [the Smiths] allege they were required to act)." (DE #30. p. 4.) However, the HASB defendants are correct in noting that the Complaint includes no such allegations. As such, the claims against the individual defendants are construed as a suit against them in their official capacities as officers of HASB. Because the HASB is also listed as a party and the claims against the individual defendants are identical to the claims against HASB, the claims against the individual defendants are dismissed.

CONCLUSION

The Court notes that, while the Smiths have not properly filed a motion to amend, within their various responses they have requested leave to file a First Amended Complaint if the original Complaint is deemed insufficient. Leave to amend should "be freely given when justice so requires." Fed.R.Civ.P. 15(a).

> That leave be 'freely given' is especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.

*Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377

F.3d 682, 687 (7th Cir. 2004).  Therefore, with the exception of
those particular claims described against the Board and  individual
Commissioners, the dismissals are without prejudice.  The Smiths
are granted leave to file a motion to amend their Complaint and a
proposed amended pleading to clarify their causes of action in
accordance with the Local Rules and the Federal Rules of Civil
Procedure.  **If the Smiths desire to do so in accordance with this
order, the appropriate motion and proposed amended complaint must
be filed by October 15, 2010.**

For the reasons set forth above: (1) Defendant Stephen J.
Luecke's Motion to Dismiss Complaint as to Him (DE #16) is **GRANTED**
and the claims against him are **DISMISSED WITHOUT PREJUDICE;** (2) the
Motion to Dismiss Under Rule 12(b)(6) (DE #24) is **GRANTED** and the
claims against Defendant Shaun Donovan, Secretary of the United
States Department of Housing and Urban Development are **DISMISSED
WITHOUT PREJUDICE**; (3) The Housing Authority's, Marva Leonard-
Dent's, and the Commissioners' Motion to Dismiss (DE #20) is
**GRANTED** and the Court notes that the claims against the Housing
Authority of South Bend are **DISMISSED WITHOUT PREJUDICE** while the
claims against the Board of Commissioners, Marva J. Leonard-Dent,
Susie Harvey-Tate, Earl L. Hairston, Rafael Morton, Robert B.
Toothaker, and Gladys Muhammad are **DISMISSED WITH PREJUDICE**; and
(4) the Request for Judicial Notice (DE #22) is **GRANTED IN PART AND**

**DENIED IN PART WITH LEAVE TO REFILE.**


DATED:  September 30, 2010          /s/RUDY LOZANO, Judge
                                    United States District Court